## Homer L. McGaw, Appellant, *v.* William J. Hamilton.

[Marked to be reported.]

*Slander and libel—Privileged communication.*

A communication to be privileged must be made upon a proper occasion, from a proper motive, and must be based upon a reasonable or probable cause. When so made, in good faith, the law does not imply malice from the communication itself, as in the ordinary case of libel, but actual malice must be proved before there can be a recovery.

*Slander and libel—Privileged communication—Words spoken in legislative body.*

A member of a legislative body cannot take advantage of his official position to give expression to private slanders against others, and then claim that the words were privileged because they were spoken in the course, and as a part, of a public discussion of a pending measure.

In an action for slander it appeared that the defendant at a meeting of a borough council of which he was a member charged the plaintiff with having sworn to a lie before a justice of the peace. At the time the words were spoken there was no motion pending, but the president of the council had called the attention of those present to the fact that plaintiff had recovered a judgment against the borough upon a claim which the council had previously refused to pay, and that the matter had been submitted to the borough solicitor who had advised that the bill should be paid. There was evidence of ill feeling between plaintiff and defendant in relation to other matters. *Held*, (1) that it was for the jury to determine from the evidence whether the utterance was malicious and wanton, and designed to injure the plaintiff under the cloak of a privileged communication ; (2) that the whole case should have been submitted to the jury.

Argued Oct. 29, 1897. Appeal, No. 111, Oct. T., 1897, by plaintiff, from order of C. P. No. 3, Allegheny Co., Aug. T., 1896, No. 180, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for slander.

The facts appear by the opinion of the Supreme Court.

At the close of plaintiff's testimony, defendant moved for a nonsuit assigning as reasons :

1. That the record of the proceedings before alderman Madden has not been offered in evidence, and there is nothing in evidence showing that a suit was pending before him.

2. That it appears from the evidence that the remarks made by the defendant were made in the course of observations on a matter then before councils, a legislative body of which the defendant was a member, and that the remarks made were pertinent to the matter under consideration.

3. That the remarks having been made by the defendant as a member of the council, and in the course of his duties as such member, and during a session of the council, they are not actionable, but are privileged.

4. That there has been no evidence of malice on the part of the defendant towards the plaintiff.

The motion was resisted,

1. Because the threats of defendant showed malice and anger which destroyed the protection of a privileged occasion.

2. Because the slanderous language of defendant was not

material or pertinent to a consideration of the matter called to the attention of council by the president.

3. Because the defamatory language was not limited to the hearing of members of council.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off judgment of nonsuit.

*William A. Sipe*, with him *William Blakely*, for appellant.— Absolute privilege is confined to cases where public service or the administration of justice requires it: White v. Nicholls, 3 Howard (U. S.) 286. To make a privileged occasion an absolute shield or defense against liability for libelous or slanderous words, written or spoken, three things are essential: first, absence of malice; second, the words printed or spoken must be material and relevant to the subject under discussion; third, the protection of the words spoken must be limited to the hearing of parties interested: Odgers on Libel and Slander, *183; Bradley v. Heath, 12 Pickering, 165; Conroy v. Times, 139 Pa. 339; Gray v. Pentland, 2 S. & R. 23; 2 Chitty on Pleadings (16 Am. ed.), 659; Hastings v. Lusk, 22 Wendell, 417; Lester v. Thurmond, 51 Ga. 120; White v. Carroll, 42 N. Y. 161; Smith v. Howard, 28 Iowa, 51; Kean v. McLaughlin, 2 S. & R. 469; Gorton v. Keeler, 51 Barb. 475; Cook v. Bostwick, 12 Wend. 48; 13 Am. & Eng. Ency. of Law, 396; Briggs v. Garrett, 111 Pa. 413; Morgan v. Livingston, 2 Rich. (S. C.) 573; White v. Nicholls, 3 Howard, 286.

It will be found that the facts relating to the privilege in this case are very similar to the case of White v. Nicholls, 3 Howard, 267, in which it was held that proof of express malice is a question of facts for the jury, and if proved, destroys the protection of an absolute privileged occasion, in the absence of malice.

*J. P. Hunter*, with him *A. N. Hunter*, for appellee.—The argument upon the part of the appellant assumes that the privilege here contended for is qualified, and not absolute. All the authorities cited by counsel are cases of a qualified, and not of absolute privilege. The distinction between the two classes is utterly ignored.

Absolutely privileged communication is confined to cases in which the public service or administration of justice requires complete immunity; for example, words spoken in legislative bodies, debates, etc., in all such cases the privilege offered by the occasion is in law an absolute bar to an action for defamation: Odgers on Libel and Slander, *183; Lord Abingdon's Case, 1 Esp. Rep. 226; Rex v. Wright, 8 Tr. Rep. 296; Stevens v. Sampson, L. R. 5 Exch. D. 53; Munster v. Lamb, L. R. 11 Q. B. Cases, 604; Kennedy v. Hilliard, 10 Irish C. L. Rep. 209; Coffin v. Coffin, 4 Mass. 28; Rice v. Coolidge, 121 Mass. 395; Barnes v. McCrate, 32 Me. 442; Kidder v. Parkhurst, 3 Allen, 393; Hoar v. Wood, 3 Met. 193; Vigours v. Palmer, 1 Bro. Pa. 41; McMillan v. Birch, 1 Binn. 178.

Even assuming that the theory of the plaintiff was correct, and that the defendant is protected by only a qualified, and not an absolute privilege, nevertheless, we contend that the nonsuit was properly granted for the reason that express malice was not proved.

The words must be stated with legal precision in the sense in which they are supposed to have been uttered, and in general they should be coupled by means of a colloquium with facts which give a particular hue to the meaning, and which, by the help of innuendoes to designate the things and persons alluded to, disclose a charge of guilt resulting from the whole, and in a way to be intelligible to a hearer of ordinary capacity: Thompson v. Lusk, 2 Watts, 17; McKennon v. Greer, 2 Watts, 352; Gosling v. Morgan, 32 Pa. 273.

OPINION BY MR. JUSTICE GREEN, January 3, 1898:

This was an action to recover damages for a verbal slander. The words uttered charged that the plaintiff had sworn to a lie in a proceeding before an alderman. As they practically charged that the plaintiff had committed the crime of perjury, they were actionable per se, and implied malice. The defense was that they were spoken by the defendant as a member of a borough council, and in the course of a debate upon a matter in which the plaintiff was interested. It seems the plaintiff, who was a printer, had presented a bill for printing to a previous council which had refused to pay it, and the plaintiff had thereupon sued the borough before an alderman and had recovered a judg-

ment for the amount of his bill. At a meeting of the council held on May 23, 1896, at which there were present a number of citizens, in addition to the councilman, the president of council called the attention of the members to the subject, saying that the plaintiff had recovered a judgment against the borough, and that the matter had been submitted to the borough solicitor who had advised that the bill should be paid. The weight of the testimony was that thereupon the defendant arose and pointing towards McGaw uttered the slanderous words in question. The plaintiff testified that the words were " That man McGaw there swore to a lie at Squire Madden's office in trying this case." Mr. McCullough, the president of the council, said the words were " That man there, turning and pointing to Mr. McGaw, had sworn to a lie before the alderman." Other witnesses swore to the utterance of the words in somewhat different language, but all of them testified that the defendant said that the plaintiff had sworn to a lie. The most of them said it was at the squire's office or before an alderman. There was no substantial difference on this subject between the witnesses. The defendant alleged that the words were spoken in the course of a debate. But the plaintiff claimed that there was no debate in progress on this or any other subject; that there was no motion pending on this or any other subject; that there was no motion pending in relation to this particular matter, and that the words were uttered recklessly and maliciously, and without any discussion. There was considerable testimony in support of this contention. All the witnesses concur that there was no motion pending. The chairman said, " After the matter had been presented by myself as chairman of the council, I was also chairman of the finance committee, Mr. Hamilton took occasion to rise to his feet and object to the payment of the bill, giving as his ground that that man there, turning and pointing to Mr. McGaw, had sworn to a lie before the alderman." He further said, " There had been no motion made. The matter had just come up for discussion, out of order, in fact." The plaintiff also said, " As soon as the matter was mentioned, and before any motion had been made to consider the matter, he sprang to his feet and pointed directly at me and stated, ' that man McGaw there swore to a lie at Squire Madden's office in trying this case.' " Another witness, James Harrison, said,

"Well, the president of council had brought up that bill of Mc-Gaw's that he had got judgment before Squire Madden against the borough, and after the president of council got through Mr. Hamilton rose to his feet and says 'That man over there swore to a lie down at the alderman's office.' Q. Pointing to whom? A. Pointing towards Mr. McGaw."

There was more testimony of a similar character which it is not necessary to repeat. Now the question whether the slanderous words were uttered during the course of a debate in a legislative body is certainly not a question of law. If it were an undisputed question of fact, the court might pronounce upon it. But here it was testified by practically all the witnesses that there was no debate in progress, and that there was no motion before the council. The substance of the evidence was that the president had merely stated to the council that the finance committee had considered the matter of the plaintiff's bill, and had referred it to the borough solicitor, who had advised that the bill be paid, when the defendant suddenly arose, and immediately uttered the slanderous words. Of course, a member of a legislative body cannot take advantage of his official position to give expression to private slanders against others, and then claim that the words were privileged because they were spoken in the course, and as a part, of a public discussion of a pending measure. In 13 Am. & Eng. Ency. of Law, 406, speaking of absolute privilege, it is said. "But this privilege is not extended to words spoken unofficially, though in the legislative hall, and while the legislature is in session." In Coffin v. Coffin, 4 Mass. 9, PARSONS, C. J., delivering the opinion said, "But to consider every malicious slander uttered by a citizen who is a representative, as within his privilege because it was uttered in the walls of the representatives' chamber to another member, but not uttered in executing his official duty, would be to extend the privilege further than was intended by the people, or than is consistent with sound policy, and would render the representatives' chamber a sanctuary for calumny." In Bradley v. Heath, 12 Pick. 163, SHAW, C. J. speaking of privileged communications said, "If the occasion is used merely as a means of enabling the party uttering the slander to indulge his malice, and not in good faith to perform his duty, or make a communication useful and bene-

ficial to others, the occasion will furnish no excuse." It was
held in White v. Nicholls et al. 3 How. (U. S.) 267, that though
a communication be privileged, if it be malicious, an action lies ;
but the plaintiff must aver and prove actual malice. DANIEL, J.
delivering the opinion, and remarking upon the rule as to priv-
ileged communications, said, " The privilege spoken of in the
books should, in our opinion, be taken with strong and well
defined qualifications. It properly signifies this and nothing
more, that the excepted instances shall so far change the ordi-
nary rule with respect to slanderous or libellous matter, as to
remove the regular and usual presumption of malice, and to
make it incumbent on the party complaining to show malice,
either by construction of the spoken or written matter, or by
facts and circumstances connected with that matter, or with the
situation of the parties, adequate to authorize the conclusion."
It was held in Gray v. Pentland, 2 S. & R. 23, that accusations
preferred to the governor against a person in office are so far in
the nature of judicial proceedings that the accuser is not held
to prove the truth of them. It is excused if they did not orig-
inate in malice, and without probable cause. YEATES, J. speak-
ing of the constitutional provisions protecting free speech, etc.,
said, " Wherever under the invidious mask of consulting the
public welfare, he renders the investigation of the conduct of a
public officer the mere vehicle of private malevolence, and a
jury on the trial shall be fully satisfied that the publication was
wanton and malicious, and without probable cause, he has no
pretensions to escape unpunished." In commenting upon this
case in Briggs v. Garrett, 111 Pa. 404, Mr. Justice PAXSON
said, " It was not contended in that case, nor do I know that it
has been in any other, that a man may use the cloak of a privi-
leged communication as a cover for malice and falsehood." In
the same case he defined a privileged communication thus : " A
communication to be privileged must be made upon a proper
occasion, from a proper motive, and must be based upon a rea-
sonable or probable cause. When so made, in good faith, the
law does not imply malice from the communication itself, as in
the ordinary case of libel; actual malice must be proved before
there can be a recovery." At the conclusion of the opinion in
Conroy v. Times, 139 Pa. 334, our Brother MITCHELL said,
" As a result we are of opinion that where the publication

charges an indictable offense, the presumption of innocence is prima facie evidence of falsity and want of probable cause, and sufficient to put defendant to proof of the facts to support his claim of privilege. It follows that this case should have been allowed to go to the jury."

From the tenor of the foregoing authorities it follows that, even in the recognized cases of absolute privilege, it is not enough that the slanderous words were uttered in a legislative hall or in a court of justice to establish a claim to absolute immunity. A further reference must be had to the circumstances, and to the occasion of the particular occurrence, before that question can be determined. We have already alluded to the testimony as bearing upon the question whether the words were uttered in debate upon a pending motion. The weight of the evidence on that subject is in the negative, and hence its solution would have to be referred to the jury. But a slight further reference to the testimony will tend to elucidate another aspect of the subject. The words used charged the plaintiff with having testified to a falsehood in a judicial proceeding before a magistrate. What had such a charge as that to do with the pending matter? There was no question of the personal fitness of the plaintiff for a pending appointment to office before the council. His private character was not at issue in any point of view. He had recovered a judgment against the borough in an adversary action for a demand. The claim had passed to judgment. The words spoken by the defendant did not connect the alleged perjury with that action. If they were uttered as to some other proceeding they were clearly foreign to any matter before the council, and in that event the utterance was clearly outside the pale of privileged communications in any aspect of the subject, and no proof of express malice would be necessary. Who is to determine that question? Manifestly the jury alone. But even if they did refer to the testimony of the plaintiff delivered on the trial of that case how does it result, as a matter of law, that they came within the limitations of an absolute privileged communication? The question as to the justice of the claim was not before the meeting. It had passed into judgment and the borough solicitor had advised the payment of the judgment. Upon the mere announcement to that effect the defendant immediately uttered the

slanderous words in question, when no motion was pending and no debate was proceeding. Was the utterance malicious and wanton, and designed to injure the plaintiff, under the cloak of a privileged communication? Who is to determine the question? Surely not the court, as a matter of law. There was other evidence as to a cause of angry dispute between the plaintiff and defendant in relation to the building of a town hall, as to which they were upon opposite sides. There was also some evidence of threats made by the defendant against the plaintiff. Was the defendant actuated by motives of revenge and malice on that account in uttering the words in question? All these things were for the jury, and the case should have been submitted to them under all the evidence. We are of opinion that it was error to withdraw the case from the jury.

Judgment reversed and procedendo awarded.