## Mulderig, Appellant, *v.* Wilkes-Barre Times.

*Libel—Malice—Privileged communication—Criticism of public official.*

Criticism of the official conduct of a public officer is always a proper subject for public discussion and information, and as such is privileged. If there is that in the publication which furnishes a basis for reasonable inference that malice was back of it, the burden remains with the party· charged to establish either its truth or the probable ground for believing it true. When such is not the case there must be some evidence beyond the mere fact of publication; but there is no requirement as to what the form of evidence shall be. It may be intrinsic, from the style and tone of the article.

In an action for libel the publication charged the plaintiff with misconduct, in his office as a civil magistrate, so gross and flagrant as to demand, in the opinion expressed editorially, his impeachment and a full investigation into his past record, which it was declared might possibly develop other charges for securing his ignominious discharge. It characterized him as a "sycophantic Justice," and in unmistakable language accused him of being party to a conspiracy to humiliate, by sending to jail overnight, a person charged before him with misdemeanor. "Never in coercion days in Ireland," the article said, "was there a more wicked conspiracy to deprive men of their right to their spoken opinion, and to railroad them to prison for daring to stand up in defense of those rights. This man M. has certainly mistaken his vocation, and has not realized that he is living in the land of the free." *Held*, that the case was for the jury, and that it was error to direct a nonsuit.

Argued April 11, 1906.　Appeal, No. 115, Jan. T., 1906, by plaintiff, from order of C. P. Luzerne Co., May T., 1901, No. 370, refusing to take off nonsuit in case of M. J. Mulderig

*v.* Wilkes-Barre Times.   Before MITCHELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Reversed.

Trespass for libel.   Before WHEATON, J.

The publication complained of was as follows:

" A weekly contemporary has suggested the dropping of the Dillionis case, a much to be desired result, but the prosecutors of that much abused man will not let the matter drop.   And as the principle of free speech, so dear to all Americans is involved, the matter must be fought out with these ignorant foreigners until they are taught that they are not now in barbarous Russia.   The last and worst feature of the Dillionis episode was the prosecution, on Friday night, before a Justice named Mulderig, of the Rev. J. J. Fletcher, the pastor of the First Presbyterian Church, of Pittston, an eminent Christian minister, on trumped up charges under the disorderly conduct Act of 1895.

" The head and front of the Rev. Mr. Fletcher's offending is that he has stood up in defence of Dillionis and in behalf of that constitutional right of every American, free speech.   It appears that on the night of February 3d, the reverend gentleman went to Booth's Hall, Pittston, and on his arrival he found a fight on, the crowd having Dillionis in a side room.   Mr. Fletcher endeavored to assist him, and remonstrated with the assailants.   These very assailants are now the prosecutors of Mr. Fletcher and it was hoped by the assistance of one Mulderig, Justice of the Peace, at Inkerman, that they would humiliate him and compel him to spend a night in jail.   The evidence of the prosecutors to the effect that he was flourishing a revolver was entirely disproved, but the sycophantic Justice immediately gave judgment.

" He said that under the testimony given and in view of the fact that Mr. Fletcher admitted going to the place in question, and as disorderly conduct was committed (?) he would find the defendant guilty and would fine him $10 and costs or thirty days in jail.

" So determined was he to send Mr. Fletcher to the county prison after the latter had refused to pay the fine, that he hesitated about obeying Judge Halsey's order to allow the defendant to give bail in $30 and appeal.

" This man Mulderig ought to be impeached and a full investigation into his past record might possibly develop other charges for securing his ignominious discharge from a magisterial office.

" Never in coercion days in Ireland was there a more wicked conspiracy to deprive men of their right to their spoken opinions and to railroad them to prison for daring to stand up in defence of those rights.

" This man Mulderig has certainly mistaken his vocation and has not yet realized that he is living in the land of the free and the home of the brave.

" The vicious disorderly conduct Act of 1895 is largely responsible for opening the way for wicked and unfounded charges, and many an innocent man and woman has been ' pulled,' under a certain construction of its clauses, and mulcted in heavy fines and costs and in default sent up to jail. These charges are invariably heard at night so that very little opportunity is given to the defendants to obtain bail, hence it has been ' pay up promptly or go to jail.'

" Ample illustrations can be given of the dangerous character of this Act, and we hope no effort will be spared to secure its repeal this session.    There is not a decent member of Luzerne bar that will speak a word in its favor and there is no better body of legal gentleman in the State of Pennsylvania.    Pittston and West Pittston has never had an opportunity of fairly testing this blot upon our statute books and realizing its vicious character.    A special petition should therefore be sent by the citizens to the legislature without delay and we have no doubt it will be extensively signed."

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*John M. Garman,* with him *James C. Murray,* for appellant. —A communication to be privileged must be made on a proper occasion from a proper motive, based upon reasonable or probable cause and made in a proper manner.    There must be neither malice nor negligence in making it: Ingram v. Reed, 5 Pa. Superior Ct. 550; Coates v. Wallace, 4 Pa. Superior Ct. 253;

Briggs v. Garrett, 111 Pa. 404; Jackson v. Pittsburg Times, 152 Pa. 406; Com. v. Swallow, 8 Pa. Superior Ct. 539; Conroy v. Pittsburg Times, 139 Pa. 334; Munns v. Dupont, 3 Wash. (U. S. C. C.) 31; Winebiddle v. Porterfield, 9 Pa. 137; Chapman v. Calder, 14 Pa. 365; Smith v. Ege, 52 Pa. 419; Collins v. Dispatch Pub. Co., 152 Pa. 187; Neeb v. Hope, 111 Pa. 145; Pittock v. O'Neill, 63 Pa. 253.

*Thomas F. Farrell,* for appellee.—In entering the nonsuit we contend that the court was correct under the rules as laid down by this court: Rowand v. DeCamp, 96 Pa. 493; Neeb v. Hope, 111 Pa. 145; Conroy v. Pittsburg Times, 139 Pa. 334; Briggs v. Garrett, 111 Pa. 404.

OPINION BY MR. JUSTICE STEWART, May 24, 1906:

That the publication complained of by the appellant tended to expose him to contempt, ridicule, hatred and derogation of character, must be admitted. If it was malicious, it was libelous. It must be adjudged malicious, except it be shown to be true or justifiably made. Its truth was not asserted, and dare not be assumed. Though untrue, it might yet have been justifiably made. If a privileged communication, it was justifiable, and the publisher of it may not be held legally answerable. It was a privileged communication if made upon proper occasion, through proper motives, upon reasonable cause, and made in the proper manner. Since the immunity of a privileged communication is an exception to the general rule that nothing short of proof of the truth is a defense to a libel, he who relies on the exception must prove all the facts necessary and bring himself within it: Conroy v. Pittsburg Times, 139 Pa. 334. A party defendant is relieved of this burden when the publication intrinsically supplies the required facts. But such is not the case here. Admittedly this was a privileged communication so far as regards the occasion of its publication. It was a criticism of the official conduct of a public officer, always a proper subject for public discussion and information. As was said in Neeb v. Hope, 111 Pa. 145, and repeated in many other cases, the conduct of public officers is open to public criticism, and it is for the interest of society that their acts be freely published with fitting com-

ments or strictures. But privileged occasion, without more, can justify only in exceptional cases, as where the publication itself or the circumstances connected therewith, negative the presumption of malice. If there is that in the publication which furnishes a basis for reasonable inference that malice was back of it, the burden remains with the party charged to establish either its truth or the probable ground for believing it true. When such is not the case there must be some evidence beyond the mere fact of publication; but there is no requirement as to what the form of evidence shall be. It may be intrinsic, from the style and tone of the article: Conroy v. Pittsburg Times, supra. "If the communication contains expressions which exceed the limits of privilege, such expressions are evidence of malice and the case shall be given to the jury." Neeb v. Hope, supra.

The publication here complained of charged the appellant with misconduct in his office as a civil magistrate, so gross and flagrant as to demand, in the opinion expressed editorially, his impeachment, and a full investigation into his past record, which it was declared might possibly develop other charges for securing his ignominious discharge. It characterized him as a "sycophantic Justice," and in unmistakable language accused him of being party to a conspiracy to humiliate, by sending to jail overnight, a person charged before him with misdemeanor. "Never in coercion days in Ireland," the publication proceeds, "was there a more wicked conspiracy to deprive men of their right to their spoken opinions, and to railroad them to prison for daring to stand up in defence of those rights. This man Mulderig has certainly mistaken his vocation, and has not yet realized that he is living in the land of the free." We are of one mind that the extreme severity of the criticism indulged in here, the epithets and language employed in connection with the charge preferred, the reference to appellant's past record, all tend to overcome the prima facie presumption of protection under the privilege, and were sufficient in themselves to put upon the defendant the burden of justifying. The case was for the jury, and it was error to direct a nonsuit.

Judgment reversed and a procedendo awarded.