## Stevenson *v.* Morris, Appellant.

*Libel—Privileged communication—Qualified privilege—Preservation of historical portraits—Damages—Declining retraction—Motive—Malice.*

1. The preservation of the portraits of early colonial patriots is a matter in which every public spirited citizen has an interest, and, consequently, any citizen who honestly believes the portraits are in danger of being injured by improper restoration is privileged to make complaint to the proper authorities, without incurring liability because of such action.

2. In order, however, to claim the benefit of the privilege and absolve himself from suspicion of being actuated by malicious motives, the citizen objecting is bound to use reasonable effort to ascertain the truth of charges of incompetency directed against the restorer, and to refrain from inflammatory and exaggerated statements.

3. Such privilege is not absolute, but merely a qualified one, and is no defense if it, in fact, appears that defendant was actuated by malice in making the statements.

4. A communication of such character to be privileged must be made on a proper occasion, from a proper motive, in a proper manner and based on reasonable and proper cause.

5. If such communication is made in writing to the president of city councils, and is read and discussed before the committee of councils in defendant's presence, and prominent persons interested in art testify in favor of plaintiff's qualifications to properly execute the work, but, notwithstanding this, defendant declines to retract or withdraw his charge, the jury may consider defendant's conduct, on the question of motive, as well as on the question of damages.

Argued January 4, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 111, Jan. T., 1927, by defendant, from judgment of C. P. No. 5, Phila. Co., Sept. T., 1921, No. 7131, on verdict for plaintiff, in case of T. H. Stevenson v. Harrison S. Morris. Affirmed.

Trespass for libel. Before SMITH, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $3,000. Defendant appealed.

*Error assigned* was, inter alia, refusal of judgment for defendant n. o. v., quoting record.

*Earl G. Harrison* and *M. B. Saul,* of *Saul, Ewing, Remick & Saul,* with them *Samuel Scoville, Jr.,* for appellant.—There was no abuse of privilege here and no intrinsic evidence of malice: Adam v. Ward, (1917) Appeal Cases 309; Conroy v. Pittsburgh Times, 139 Pa. 334; Mulderig v. Wilkes-Barre Times, 215 Pa. 470; Neville v. Ins. Co., (1895) 2 Q. B. Div. 156, 171; Laughton v. Bishop of Sodor and Man, L. R. 4 P. C. 495; M'Millan v. Birch, 1 Bin. 178; Gray v. Pentland, 4 S. & R. 420; Press Co. v. Stewart, 119 Pa. 584; Wharen v. Dershuck, 264 Pa. 562; Pritchard v. Wenger, 268 Pa. 114; Luckock v. Pub. Co., 74 Pa. Superior Ct. 429; Briggs v. Garrett, 111 Pa. 404.

There is no extrinsic evidence of malice in this case; there was, therefore, nothing to go to the jury: Clark v. North Am. Co., 203 Pa. 346; Wharen v. Dershuck, 264 Pa. 562.

There was such probable cause for the writing of the privileged communication that this action is not sustainable: Neeb v. Hope, 111 Pa. 145; Chapman v. Calder, 14 Pa. 365; Briggs v. Garrett, 111 Pa. 404.

*Owen J. Roberts,* with him *C. Russell Phillips,* for appellee.—Written words are libelous per se when they impute dishonesty in business or when they are prejudicial to a man in his employment or trade: McIntyre v. Weinert, 195 Pa. 52; Conroy v. Pittsburgh Times, 139 Pa. 334; McGaw v. Hamilton, 184 Pa. 108.

A communication to be given qualified privilege must be made "upon a proper occasion, from a proper motive,

in a proper manner and must be based upon a reasonable or probable cause": Montgomery v. Printing Co., 229 Pa. 165; Wharen v. Dershuck, 264 Pa. 562.

Privilege is an affirmative defense and the burden of proving it rests upon defendant: Montgomery v. Printing Co., 229 Pa. 165.

Evidence of malice is to be found in the excessive language used, in the absence of probable cause and in the recklessness of defendant in writing the letter without investigation: Neeb v. Hope, 111 Pa. 145; McGaw v. Hamilton, 184 Pa. 108; Jackson v. Pittsburgh Times, 152 Pa. 406; Pittock v. O'Niell, 63 Pa. 253; Gray v. Pentland, 4 S. & R. 420.

Carelessness and negligence in the publication of untrue statements are evidence of malice: Hartman v. Hyman, 287 Pa. 78.

Want of reasonable care and diligence to ascertain the truth, before giving currency to an untrue communication, will destroy the privilege: Briggs v. Garrett, 111 Pa. 404; Luckock v. Pub. Co., 74 Pa. Superior Ct. 429; Montgomery v. Pub. Co., 229 Pa. 165.

OPINION BY MR. JUSTICE FRAZER, February 7, 1927:

Defendant appeals from a verdict and judgment recovered against him in an action for libel charging him with writing and publishing a letter containing false and defamatory statements to the injury of plaintiff in his business or profession.

Plaintiff is engaged in the work of cleaning and restoring portraits and other paintings, and the record shows his knowledge and experience in that line is such as to reasonably qualify him as an expert. Defendant is an art connoisseur, and has for many years been active in matters pertaining to art. In 1921, the City of Philadelphia decided to clean and restore to their former condition as nearly as possible eighteen portraits of signers of the Declaration of Independence, a part of the State House collection in that city, and let the contract

for the work to Ernest L. Parker, who at that time was engaged in the storage business. Parker in turn arranged with plaintiff to assist in executing the contract. While they were so engaged, defendant visited Independence Hall and was informed by two of the persons in charge of the exhibit, neither of whom possessed experience in the restoration of oil paintings, that in their opinion the work was not being properly executed. Defendant knew Parker, in a vague way, as having a storage warehouse, and testified he was not acquainted with plaintiff, and had never heard of him, but was advised "by somebody who knew him" that plaintiff had been a park guard. As a result of the information he received concerning the work, defendant addressed a letter to the president of council which was read to that body, and published in newspapers, in which he said, among other things: "The present administration has made a contract for the manipulation [of the portraits] with a person of no experience or skill in such an art, and at a price far beyond the customary fee for the best work of the kind.

"Through the influence of members of the art jury and the park commission, whose motives are not disclosed, a man in the storage business, who may be apt at storing, but is unknown in restoring, joined with a former park guard, has been given by director Caven a contract for undertaking eighteen of the irreplaceable relics.

"A month or more ago they began to remove the relining of a canvas with a penknife, and in an hour had committed so much damage that an alarm reached city hall and the devastation was held up by the mayor.

"Thus for some weeks the danger, which I have tried in many ways to avert, by making visits to the mayor and director Caven and imploring them to prevent the desecration, by securing letters from alarmed citizens of much weight, and by efforts to expose the crime through publicity, was deferred; but I believe that the

same sinister powers who hold the mayor in their grip are now going to prevail. Three pictures which required only washing and varnish have been chosen for a beginning and these, demanding no technical knowledge, being treated, the others of more difficult manipulation will follow, when this rich hoard of historic treasure, the inheritance of the whole nation, will be slaughtered to make a Roman holiday for a recreant city government."

At the trial a nonsuit, based on the allegation that the communication was privileged, was denied; but the court instructed the jury in effect that the occasion was a privileged one and it was for them to determine whether the letter complained of evidenced an abuse of the privilege by "a reckless disregard for the truth, or want of good faith, or legal malice" indicated by use of violent and intemperate language.

There can be no doubt that the preservation of old paintings of early colonial patriots, such as were in the process of restoration by plaintiff, was a matter in which every public spirited citizen had an interest and, consequently, any citizen who honestly believed the portraits were in danger of being injured was privileged to make complaint to the proper authorities, without incurring liability because of such action. To claim the benefit of the privilege, and absolve himself from suspicion of being actuated by malicious motives, defendant was bound to use reasonable effort to ascertain the truth of charges of incompetency directed against the person engaged in the work, and to refrain from the use of inflammatory and exaggerated statements. The privilege, in cases of the character here involved, is not absolute, but merely a qualified one, and is no defense, if it in fact appears defendant was actuated by malice in making the statements. It being undisputed that the charge of incompetence on the part of plaintiff was untrue, the burden was on defendant to show the use of reasonable care and diligence to ascertain the truth of the statements contained in his letter before making

them (Hartman v. Hyman, 287 Pa. 78, 84, and cases cited) and establish all facts necessary to bring himself within the rule of privilege (Hartman v. Hyman, supra, p. 83, and cases cited), which requires that the communication be one made on a proper occasion, from a proper motive, in a proper manner, and based on reasonable or probable cause: Conroy v. Pittsburgh Times, 139 Pa. 334, 338; McGaw v. Hamilton, 184 Pa. 108, 114; Montgomery v. New Era Printing Co., 229 Pa. 165, 167; Wharen v. Dershuck, 264 Pa. 562, 569; Hartman v. Hyman, 287 Pa. 78, 83. The intemperate nature of the language used in defendant's letter, as well as his failure to make reasonable inquiry as to the professional ability of plaintiff, might properly be taken into consideration by the jury in determining whether he was actuated by malice, or wrote the letter with reckless disregard of the truth or falsity of the statements it contained: Neeb v. Hope, 111 Pa. 145, 154; Conroy v. Pittsburgh Times, 139 Pa. 334, 338; Jackson v. Pittsburgh Times, 152 Pa. 406, 417; Hartman v. Hyman, 287 Pa. 78, 84.

In this case defendant brought himself, as matter of law within only one of the elements necessary to establish privilege, namely that the communication was made on a proper occasion. Beyond this, the manner in which it was made is in itself sufficient to cast doubt on his motive for making it, and his admitted lack of knowledge or inquiry as to the truth of his charges is sufficient to raise a question whether as a fact reasonable or probable cause existed. The further fact that, at a subsequent hearing before a committee of city council, the letter was read and discussed and evidence of prominent persons, interested in art, submitted in defendant's presence, tending to show plaintiff possessed the necessary qualifications to properly execute the work, but, notwithstanding this, defendant declined to retract or withdraw his charges, was a proper matter for the jury to consider on the question of motive, as well as the question of dam-

ages. The case could not properly have been withdrawn from the jury, and we find no error in the manner of its submission.

The judgment is affirmed.