## Russell v. Pennsylvania Mutual Life Insurance Company, Appellant.

352

Argued April 24, 1935. 

 Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ. 

*Crawford Scott,* for appellant.

*C. M. Murphy,* with him *Martin C. Mihm,* for appellee.

OPINION BY BALDRIGE, J., July 18, 1935:

The plaintiff obtained a judgment in an action of trespass brought to recover damages for an alleged libel.

The only assignment of error is to the refusal of the court to enter judgment for the defendant n. o. v.

The plaintiff was employed as an insurance agent for the defendant from October, 1931, to the latter part of March, 1932, when, according to his testimony, he resigned. In compliance with the requirements of the Insurance Department of the Commonwealth of Pennsylvania, Form H-66, containing questions and answers, was filled in and sent to that department. The answers therein stated that plaintiff had been discharged and that a cash shortage existed in his accounts of premiums collected, in the sum of $13.34. The plaintiff contends that this report was libellous in that it wilfully, maliciously, falsely and unlawfully charged him with being short in his accounts. The defense was justification and that the report was a privileged communication.

It appears from the testimony that in these industrial insurance policies, the premiums, which the plaintiff was engaged to collect, are payable weekly. The practice of the defendant, as explained by the plaintiff and others employed by defendant, is to charge the agent with the "account" of the policy holder. The account may be short, but that does not necessarily indicate that the agent has collected the premiums, as the party insured may be delinquent.

The plaintiff testified that he was making collections from 209 policy holders; some of the premiums were paid in advance, others within the four-weeks' grace period, and still others were in default; that without the plaintiff's knowledge, Shermach, an employee of defendant and plaintiff's superior, altered plaintiff's records of payments received from policy holders, by taking a credit from those who had paid in advance and giving a corresponding credit to those who were more than four weeks in arrears; that this condition was known to the defendant's superintendent, Haines, who was in charge of the Pittsburgh office at that time. The

plaintiff denied that he was short in his accounts, and contended that the defendant was indebted to him for wages. Leonard, employed as assistant manager, testified that he had made an inspection of the plaintiff's account books, at the request of Ewell, who succeeded Haines as manager, which showed arrears in plaintiff's accounts but no actual cash shortage, and that he so informed Haines. Another witness, McGaughey, who had been staff manager, testified that there was no actual cash shortage by plaintiff, stating further: "I told Mr. Haines that the account was out. He said how much and I told him how much and he said, 'Well, I will have to report to Harrisburg.' I said, 'Don't do that, it is excess, it is not his fault.' I explained it to him that way, yes sir." Ewell was dead at the time the suit was brought, but neither Shermach nor Haines was called to deny the testimony offered upon the part of the plaintiff. All the books were sent to Philadelphia to be audited by Dugan, defendant's auditor, from which he determined there was a cash shortage amounting to $13.34.

The appellant relies mainly upon the case of Briggs v. Garrett, 111 Pa. 404, 2 A. 513, where the court held there was no proof of actual malice. The defendant was president of a political committee. He had received a letter from a city official, reflecting upon the integrity of Judge Briggs who at that time was a candidate for re-election. The letter was handed to the secretary, with directions for him to read it. As Mr. Justice PAXSON, in the course of his opinion, said (pp. 413, 414):

"The letter was intended as its address plainly indicates, not for Mr. Garrett individually, but for the committee. He was merely the conduit through which it was to pass ...... He then, in the usual course of his business, handed the letter to his secretary with

instructions to read it and it was read. This is the sum of Mr. Garrett's offending ...... This brings us to the vital question in the cause. Was this letter a privileged communication? We are met here with the inquiry, is falsehood privileged? I answer no. A lie is never privileged. It always has malice coiled up within it. When a man coins and utters a lie, or when he repeats it knowing it to be false, the law implies malice and he cannot shelter himself behind the doctrine of privileged communications."

The difference between the facts in that case and the one at bar is at once apparent.

The plaintiff proved a prima facie case. The burden was then on the defendant to show that the report was a privileged communication (Montgomery v. New Era Printing Co., 229 Pa. 165, 78 A. 85), that is, it was made upon a proper occasion, from a proper motive, in a proper manner, and upon reasonable or probable cause: Conroy v. Pgh. Times, 139 Pa. 334, 21 A. 154; Mulderig v. Wilkes-Barre Times, 215 Pa. 470, 64 A. 636. If it was shown to be privileged, the plaintiff had to establish that it was maliciously or recklessly made. The plaintiff argues that the defendant failed to show that the report was a privileged communication, in that the alleged shortage was reported without probable cause. In Com. v. Foley, 292 Pa. 277, 281, 141 A. 50, "probable cause" is defined as follows:

" 'A reasonable ground of suspicion, supported by circumstances sufficient to warrant a cautious man in believing that the party is guilty of conduct imputed to him.' This cause must exist at the time of making the publication, and must be found in circumstances of adequate probative force, lying within the personal knowledge of the publisher or writer, or information derived from sources of such a responsible character as to lead any reasonably prudent man to regard it as trustworthy."

There was sufficient evidence for the jury to conclude that the defendant knew there was no actual cash shortage in plaintiff's accounts and that by making a report to the Insurance Department that he was in default he would be deprived of obtaining employment as an agent in any other insurance company. The learned court below very clearly and fairly defined the issues involved, and instructed the jury, inter alia, as follows:

"If you believe that the statement was true or substantially true and not maliciously or recklessly made, your verdict should be for the defendant. If, however, the weight of the evidence satisfies you the statement was not true or if true it is recklessly or maliciously made with intent to injure the plaintiff, he would be entitled to a verdict and you will then proceed to the question of damages."

The defendant apparently recognized the correctness of the charge as it made no complaint other than to take a general exception.

Applying the principles of law to the facts we have outlined, the question of defendant's good faith and exercise of proper care was for the jury. It concluded that defendant's carelessness resulted in a loss to the plaintiff and that he should be compensated therefor, as the probable consequences of its wrongdoing could have been reasonably anticipated.

We find no sufficient reason to disturb the result reached in the court below.

Judgment is affirmed.