Diamond *v.* Krasnow, Appellant.

Argued April 20, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John H. Lauer,* for appellant.

*Abraham Pervin,* with him *Jacob M. Stone,* for appellee.

OPINION BY STADTFELD, J., June 28, 1939:

This is an appeal by defendant from the judgment on a verdict in favor of plaintiff, Sam Diamond, in an action to recover damages for injuries which he alleges resulted from what is commonly known and referred to as "trade libel," circulated, as the plaintiff alleged, by Sam Krasnow, the defendant.

The facts as disclosed by the record are briefly as follows: Defendant is a wholesale fruit and produce dealer in the produce district of the City of Pittsburgh. He and other wholesale dealers are members of the Pittsburgh Produce Credit Association. One of the charter purposes of this association was to furnish information to members to enable them to regulate credits and collect debts. The by-laws of the association provide that all bills for goods sold on credit shall be due and payable on Monday following the sale, and unless paid on or before twelve o'clock noon, on the following Saturday, the creditor, who is a member, shall report that fact to the association. A fine is imposed upon any member failing to make such report. Members are prohibited under penalty of fine from selling on credit to any person or firm reported as a debtor until duly notified by the secretary of the association that such party's name has been removed from the list. Provisions are set forth for the settlement of disputed accounts between debtor and creditor through arbitration by mutual agreement, conditioned upon the debtor's payment of the entire amount, "less the amount actually in dispute or to be reported by the creditor as a delinquent debtor." In the event of an action at law being brought by either party based upon such dispute, then such name shall be removed from the delinquent list as soon as the association is informed of such action.

A dispute arose between defendant, Sam Krasnow, and plaintiff, Sam Diamond, over the amount due defendant on a claim based upon an order, sale and receipt of certain merchandise. On June 11, 1936, plain-

tiff ordered from defendant, 20 boxes of apples, 10 boxes size 138 and 10 boxes size 150. On June 25, 1936, defendant billed plaintiff for 20 boxes of apples in the sum of $32.60. Two days later, plaintiff tendered defendant a check in the sum of $16.30 in payment of 10 boxes of apples of size 150, which merchandise was all that plaintiff claimed had been received. This check was refused as payment in full, but defendant offered to accept it as part payment of the bill. Plaintiff rejected this proposal. Thereupon, plaintiff was immediately reported by defendant to the association as a delinquent debtor in the sum of $32.60; but his name was not published upon the list until a later date. During the ensuing week, debtor and creditor discussed their dispute. In the course of one discussion, defendant was alleged to have demanded full payment of the claim under threat of blacklisting plaintiff. It was further alleged that payment for the 10 boxes of apples was again tendered on July 3, 1936, but refused with another threat of blacklisting unless the entire claim was paid. The dispute was not submitted to arbitration, although the testimony is conflicting as to whether or not arbitration had been proposed by defendant, and rejected by plaintiff.

On July 6, plaintiff's name first appeared on the list published by the association; it appeared again on July 11, and on July 14, but not on the next list published on July 18. Hence it appears plaintiff was effectively blacklisted from July 6 to July 18, 1936, when the former list of July 14, 1936, was supplanted in force and effect. As a result of the publication of this list, plaintiff's credit was terminated and he was compelled to pay cash for all purchases made from members of the association making delivery of goods on the terminal platform where the association's checker was stationed to enforce the credit boycott against listed delinquent debtors. Only one member of the association, the Union Fruit Auction Company, extended credit to plaintiff,

and did so to the extent of $9600, during the period of the blacklisting. This accommodation was made possible only because that company did not operate through the terminal platform, and hence did not have to clear its sales slips through the association's checker. Pressure was soon brought to bear upon the United Fruit Auction Company with the result that plaintiff was warned of having even this credit cut off unless his name should be removed from the published list. Thereupon, plaintiff, being wholly dependent for his supplies upon the members of the association, delivered two checks, each in the amount of $16.30, to defendant. A notation of payment under protest was made upon one of the checks. Plaintiff's name was then removed from the list.

A verdict was returned by the jury in favor of plaintiff in the sum of $909. Motion for a new trial and motion for judgment non obstante veredicto were overruled and judgment entered on the verdict. This appeal followed.

In answer to the plaintiff's statement of claim, the defendant filed a plea of (1) not guilty and (2) justification alleging that the publication was true because the plaintiff was indebted to the defendant in the sum of $32.60 on July 6, 1936, for 20 boxes of apples sold on June 11, 1936, and that he remained indebted until July 18, 1936, when the $32.60 was paid.

Appellant now contends (1) that the statement as to plaintiff's delinquency was true and therefore it is a complete defense to the action; (2) that the communication by the defendant having been pursuant to the provisions of the by-laws of the Pittsburgh Produce Credit Association, confidentially to the other members of said association, and that the communication being true, the same was privileged under the law; (3) that defendant had probable cause for making the publication; and (4) that plaintiff failed to introduce evi-

dence to explain the issuance of the alleged libelous communication.

For purposes of convenience in exposition we shall consider appellant's final contention first. Appellant, Sam Krasnow, caused the name of appellee, Sam Diamond, to be inserted and published on a list circulated by the Credit Association among its members in the following words: "Diamond Sam City Kras." The inducement or innuendo laid in the statement of claim averred "That by said words and terms, he (defendant) intended to charge and did charge that the plaintiff was not prompt in the settlement of his obligations and was not worthy of having credit extended to him, well knowing that the Pittsburgh Produce Credit Association would publish the plaintiff's name on its 'blacklist' and circulate it among all its members, and that the effect of such publication would be to deprive and prevent plaintiff from securing merchandise on credit." The by-laws of appellant's credit association received into evidence, provides for the listing of "delinquent debtors"; for the circulation of the list among its members; and for the punishment of members who extend credit to those whose names appear upon that list. This last provision obviously goes much farther than suggesting that those listed are unworthy of credit, and leaving the decision as to credit extension with the members. Moreover, appellant's original plea of justification, as well as the testimony offered in support thereof recognize the listing as the brand mark of a delinquent debtor, the meaning being well understood by every member receiving a copy of the list. It also appears from the record that the trial judge, during the examination of plaintiff, asked the question: "What is the list within the parlance of the trade? The answer was, "The list is that you are unworthy of credit."

Any written words are libelous which impeach the credit of any merchant or trader by imputing to him insolvency or even embarrassment, whether past, pres-

ent or future, or which impute to him dishonesty in the conduct of his business, or which in any other manner are prejudicial to him in the way of his employment or trade.[1] And if the actual words used are capable of the meaning ascribed to them by the plaintiff in substantiation of the innuendo alleged, it is for the jury to say whether they were used in that sense in the light of all the circumstances.[2] Since, therefore, the mere placing of a name, or causing it to be placed on a blacklist published by a credit association constitutes a publication capable of a defamatory meaning,[3] the verdict of the jury has, in the instant case, established the libelous character of the publication.

As to defendant's first contention, to-wit: "The statement as to plaintiff's delinquency being true, the truth thereof is a complete defense to the action at bar," it is argued that since the plaintiff really owed the defendant $16.30, reporting him as a delinquent was truthful. Defendant, however, in the original report by him to the association (Exhibit 2) lists the plaintiff as delinquent in the sum of $32.60; his plea of justification also alleges an indebtedness of $32.60 and during the trial the defendant endeavored to prove an indebtedness of $32.60 and the case was tried and submitted to the jury on that basis. It was admitted that plaintiff had

---

[1] *Hayes v. Press Co.,* 127 Pa. 642, 18 A. 331; *McIntyre v. Weinert,* 195 Pa. 52, 45 A. 666; *Will (Nat. News Co.) v. Press Pub. Co.,* 309 Pa. 539, 164 A. 621.

[2] *Boyer v. Pitt Publishing Co.,* 324 Pa. 154, 188 A. 203; *Price v. Conway,* 134 Pa. 340, 19 A. 687; *Bayuk v. Keinath,* 63 Pa. Superior Ct. 393; *Garvin v. Mercur,* 68 Pa. Superior Ct. 1.

[3] See *McIntyre v. Weinert,* supra; and *Hartman Co. v. Hyman et al.,* 87 Pa. Superior Ct. 358. (Plaintiff was listed as an alleged delinquent debtor on a blacklist published by defendant's credit association. This court said, at p. 362: "That the slanderous words complained of by plaintiff tended to injure his business credit must be admitted."), affirmed by the Supreme Court reviewing other points in the case in 287 Pa. 78, 134 A. 486.

tendered to defendant $16.30 as payment in full for his indebtedness, before the publication of plaintiff's name on the delinquent debtor's list, but this amount was refused by the defendant as payment in full. The jury, by its verdict, has found that the amount tendered by the plaintiff was the amount actually due. The plea of the "truth" of the communication, embodying the innuendo that plaintiff was unworthy of credit, therefore fails. Had the report of the defendant stated the actual situation, viz; that there was a dispute to the extent of one-half of the alleged indebtedness, and that plaintiff had tendered payment of the other half, no exception to such report could have been taken. Sometimes half the truth is more injurious than the whole truth.

Appellant's second and third contentions raise the defense of privilege. The communication, it is argued, having been made pursuant to the provisions of the by-laws of the credit association, is privileged under the law.

In *Hartman v. Hyman & Lieberman,* 287 Pa. 78, 134 A. 486, the Supreme Court of this Commonwealth considering the character of this type of credit association, stated at p. 86: "...... we decide that it is legal, and, if its by-laws are reasonable and the association is properly conducted, it tends to benefit its members and indirectly the community also. What we do say is, that every member of this particular association is bound to know of the possible far-reaching effect which may result from placing the name of a trader on its delinquent debtor's list, and of sending that list to a large number of the persons from whom the trader purchases the goods needed by him in carrying on his business; and hence where, as under the plan of this bureau, the alleged delinquent is to be given no opportunity by it to deny the charge, and his past reputation is to be given no weight, every member is required to

exercise great care before he sends in a name to be placed on such a list. If he does not he may make himself liable for the wrong done. ......" And the question of defendants' care, the court held, was a matter for the jury's consideration. It is obvious, therefore, that mere membership in a credit association of this character and compliance with its provisions do not of themselves afford an indefeasible immunity from liability. That case presented one limitation—absence of due care—to the exercise of the privilege. In so doing the court recognized that compliance with the provisions of the association did not constitute for its members an invulnerable shield of protection against liability, but merely set up the conditions or privileged occasions under which the communication might properly be published, provided that all the legally established tests of a privileged communication are likewise satisfied.

A privileged communication, however, is one made not only upon a proper occasion, but from a proper motive, in a proper manner and upon reasonable or probable cause.[1] The immunity of such a communication is an exception to the general rule that nothing short of the truth is a defense, and he who relies upon the exception must prove all the facts necessary to bring himself within it.[2] By the above definition of a privileged communication, it is clear that privileged occasion of the utterance, without more, cannot justify

---

[1] *Hartman v. Hyman et al.,* supra; *Conroy v. Pgh. Times,* 139 Pa. 334, 21 A. 154; *McGaw v. Hamilton,* 184 Pa. 108, 39 A. 4; *Montgomery v. New Era Printing Co.,* 229 Pa. 165, 78 A. 85; *Stevenson v. Morris,* 288 Pa. 405, 136 A. 234; *Russell v. Pa. Mut. Life Ins. Co.,* 118 Pa. Superior Ct. 351, 179 A. 798.

[2] Cases under note 1, supra, and the following: *Collins v. News Co.,* 6 Pa. Superior Ct. 330; *McGeary v. Leader Publish. Co.,* 52 Pa. Superior Ct. 35; *Mulderig v. Wilkes-Barre Times,* 215 Pa. 470, 64 A. 636.

it.[3] Hence, even though appellant may, as a matter of law, have brought himself within some of the elements necessary to establish privilege, that would not be sufficient to render the privilege indefeasible. It must appear that neither the manner in which the publication was made nor the motive behind it was improper: See *Stevenson v. Morris*, 288 Pa. 405, 136 A. 234. All tests that establish the privilege must be satisfied.

In the instant case it is true that the purpose of the communication between the members of the association was no doubt partly to circulate information as to the poor standing of the alleged debtor so as to protect them in their dealings with him. It is equally true, however, that one express charter purpose of the association was "to enable them . . . . . . to collect debts," and that appellant, according to the evidence, exercised threats and coercion against appellee tending to prove his use of the machinery of the association for his own pecuniary self-interest in the collection of an alleged personal debt. Appellant, notwithstanding the excellent credit which appellee had enjoyed for many years, was not satisfied to seek redress in the courts. Despite his knowledge of appellee's legal defense to the claim, he took the short and drastic method provided by the by-laws of the association, destroying appellee's credit and cutting off his sources of supply.

The manner of the publication, moreover, appears to have been such that no intimation was given the recipients that any real dispute existed as to the indebtedness; they might well have drawn the inference of a clear default upon an acknowledged debt. All of this evidence constituted proper matter for the jury to consider on the questions of motive and manner of publication, bearing upon the presence of malice and the absence of privilege.

---

[3] *Hartman v. Hyman et al.*, supra; *Stevenson v. Morris*, supra.

78

The court properly [1] submitted the question of malice to the jury both in its general charge, as also in affirming defendant's fourth point which was as follows: "If the jury believe that the defendant in communicating his record of the plaintiff's delinquency to the Pittsburgh Produce Credit Association did so without malice and without reckless negligence, or without careless dealing on his part, there is no liability."

The assignments of error relative to the charge of the court are based upon the reading by the court to the jury of the following excerpt from the opinion of this court in the case of *Harman v. Hyman et al.,* supra: "If you believe, in fact, that there was no malice or that there was no reckless carelessness, no reckless negligence, and no careless dealing to such an extent as showed that they did not care much what they did with their customers' reputation, there would be no liability." We believe that this and other excerpts from the same case constituted a correct statement of the law as applicable to the instant case.

We have attentively read with a great deal of interest, the very able brief of counsel for appellant, but after careful consideration we can find no errors which would warrant a reversal of the judgment.

The assignments of error are overruled and judgment affirmed.

---

[1] *McGaw v. Hamilton,* supra.