Jessie K. FRIDAY, Henrietta (Friday) Ubnoski, Annie (Friday) Stewart and Husband, F. F. Stewart, Elsie (Friday) Neely and Husband, Lewis R. Neely Daphne (Friday) Wallace and Husband, Melvin Wallace, Jed Friday and Gerald N. Friday, Plaintiffs,

v.

OFFICIAL DETECTIVE STORIES, INC.

and

Harry Keller, Defendants.

Civ. A. No. 30565.

United States District Court
E. D. Pennsylvania.

Sept. 30, 1964.

Harry L. Jenkins, of Jenkins, Bennett & Jenkins, Philadelphia, Pa., for plaintiffs.

Louis G. Hill, of Dilworth, Paxson, Kalish, Kohn & Dilks, Philadelphia, Pa., for defendants.

FREEDMAN, Circuit Judge (acting by designation).

This suit for libel was brought by plaintiffs, all Texas citizens, against defendants, a Pennsylvania corporation which publishes Official Detective Stories Magazine, and its editor, a Pennsylvania citizen.

The allegedly libelous statement is contained in a story in the January 1961 issue of the magazine, which dealt with the exploits of Jack Friday, a relative of all of the plaintiffs, and his apprehension by the police. The magazine was published in Pennsylvania and circulated throughout the nation, including the area in Texas in which the plaintiffs reside. It contained this statement: "A search of police records yielded the names of several associates, as well as all Friday's relatives who lived in West Texas. These persons were warned to notify police if they received any communication from Friday and their homes were placed under surveillance."

Plaintiffs complain that "police records", as understood by the ordinary reader, are the records of arrests, convictions and sentences for offenses against the law, and that the statement thus accused all those who are members of the Friday family in West Texas, including plaintiffs, of being criminals.

Defendants have moved for summary judgment on a number of grounds: the ordinary reader could not reasonably construe the reference to "police records" as an accusation of criminal involvement; the statement is in fact true because the names of the plaintiffs were obtained by a search of the records relating to Jack Friday in various law enforcement agencies; no individual relative was defamed because of the large size of the group mentioned; and defendants acted within a qualified privilege to comment in good faith upon matters of public interest.

These issues present a number of difficult legal questions. To them is added the threshold problem of the choice of substantive law which is to be applied in their solution. Is the applicable law that of Texas, or Pennsylvania, or separately that of each of the states in which the plaintiffs may have been injured by the nationwide circulation of the magazine? See Hartmann v. Time, Inc., 166 F.2d 127, 1 A.L.R.2d 370 (3d Cir. 1948).

■■ It is, however, unnecessary to reach the conflict of law questions at this time. Whatever state law is applicable, the first question, whether the statement is defamatory, may not be disposed of without trial. I am not prepared to say as a matter of law on the present record that the words of the statement, taken in their usual and ordinary sense, could not reasonably bear the meaning ascribed to them by plaintiffs. There is nothing before me one way or the other on whether the term "police records" is a term of art. Certainly it is not clear to me beyond all doubt that its ordinary meaning in the mind of the reading public excludes an inference of criminal involvement.[1] (See 3 Restatement, Torts, § 614). Defendants could easily have specified that the records referred

---

1. Defendants' motion for summary judgment (¶ 12) itself refers to an arrest and conviction of one of the original plaintiffs as appearing on the "police records" of the justice of the peace.

to were those of the fugitive and that plaintiffs' names were disclosed simply because they were listed as his relatives. Moreover, the affidavit of Jack Jones, the author of the article, shows that these were not simply records of the police, but also of the Sheriff's Office, the Texas Rangers and "other law enforcement officials".[2] The shorthand reference to police records is to be considered in the light of the choice of a more accurate description available to defendants and the inference which their choice of words may supply. In these circumstances it must be left to the jury to decide if the statement is in fact defamatory.

██ Of course, if plaintiffs' interpretation is accepted the defense of truth necessarily falls. Truth, to be a valid defense, must extend to the innuendo, the libelous implications and insinuations, as well as the direct accusation in the statement.[3] And the innuendo admittedly is not true, for it is conceded by defendants that not all the plaintiffs had criminal records.

██ As to the defense that there can be no defamation because the statement refers to a large group, every one of Friday's West Texas relatives, it cannot be said as a matter of law that the persons comprising the group were not individually defamed. Much must necessarily depend on the factual circumstances not now available to me which give content to the conception of size as exclusive of individual identification.[4]

██ Finally, the defense of qualified privilege is not established as a matter of law. While there is a qualified privilege to publish statements concerning matters of public interest (3 Restatement, Torts, § 598), there is a question present which will require resolution by the jury. It is whether the statement of fact could have been made without any defamatory innuendo. Assuming that the article was published in good faith concerning a matter of public interest, nevertheless, if the author chose deliberately to state the supposed fact in a defamatory manner when there was equally available an innocent version, the qualified privilege would be lost.[5] A comparison of the magazine story with the affidavit of the author, Jones, shows how the factual matter could have been related accurately in the story without the evil innuendo.

Enough has been said, therefore, to make it clear that this is not a case for summary judgment.

### ORDER

And now, September 30, 1964, the motion of defendants for summary judgment is denied.

2. The record also makes reference to the records of the State Penitentiary.

3. Diamond v. Krasnow, 136 Pa.Super. 6S, 7 A.2d 65 (1939); see 53 C.J.S. Libel and Slander § 137b, p. 225.

4. See Farrell v. Triangle Publications, Inc., 399 Pa. 102, 105–106, 159 A.2d 734 (1960); 1 Harper & James, Torts (1956), § 5.7, p. 367; 3 Restatement, Torts, § 564c.

5. Bell Publishing Co. v. Garrett Engineering Co., 141 Tex. 51, 170 S.W.2d 197 (1943), that false statement of fact vitiates privilege; McDaniel v. King, (Tex.Civ.App.) 16 S.W.2d 931 (1929); Hartman & Co. v. Hyman & Lieberman, 287 Pa. 78, 134 A. 486, 48 A.L.R. 567 (1926), that negligence in stating fact destroys privilege; 53 C.J.S. Libel and Slander § 132, pp. 215–216. Cf. 53 C.J.S. Libel and Slander § 99, p. 156.