(72 App. Div. 184.)

### STOKES v. MORNING JOURNAL ASS'N.

(Supreme Court, Appellate Division, First Department.   May 23, 1902.)

**1.** LIBEL—PUBLICATION BY NEWSPAPER—PERSONS LIABLE—EVIDENCE.

Prior to April, 1897, the paper in which the alleged libel appeared was published by defendant corporation, when the paper was formally transferred, with the other property used in publication thereof, to the S. Company, for the sum of $1 and other consideration, after which the S. Company assumed its publication. Prior to the transfer, the proceeds of the paper were deposited with the banking house to the credit of an account headed "The New York Journal," and after the transfer the money was deposited to the same account. Both the defendant and the S. Company were managed by the same persons, and there was no change in the manner of doing business, except that defendant continued in business, publishing the German edition of the paper, printed on the same premises, and the proceeds of the sale of both papers were deposited to the credit of the same account. *Held*, that the question whether the newspaper was in fact published by defendant or the S. Company, was for the jury.

**2.** SAME—PLEADING.

Under Code Civ. Proc. § 535, providing that it shall not be necessary, in an action for libel, to state in the complaint any extrinsic fact for the purpose of showing the application to the plaintiff of the defamatory matter, but that the plaintiff may state generally that it was published

of and concerning him, an allegation in a complaint that the article was-
published of and concerning the plaintiff was a sufficient allegation that
the article was understood by plaintiff's friends and acquaintances
generally as applying to plaintiff.

**8. SAME—PUNITIVE DAMAGES.**

Where, in an action for libel, it appeared that the publication was
made by the newspaper without investigation, and that on plaintiff's
request defendant refused to make a retraction or explanation, it was
proper to authorize the recovery of punitive damages.

**4. SAME—EVIDENCE—MALICE.**

In an action for libel, evidence that plaintiff applied to the responsible-
editor of the newspaper to retract the publication was admissible, as
bearing on the question of express malice.

**5. SAME—TRANSFEREE OF DEFENDANT—ACTION.**

Where an action for libel was brought against a newspaper corpora-
tion, and it was claimed that defendant was not the publisher of the-
paper, but that the paper was published by another company, to which
defendant had conveyed it, while plaintiff claimed that defendant was
nevertheless jointly engaged in the publication of the paper, it was not
error to exclude the summons and complaint in an action brought by
the defendant against such transferee company, since the fact that it
was also concerned in the publication would not relieve the defendant
from liability.

**6. SAME—INSTRUCTIONS—WEIGHT OF EVIDENCE.**

In an action for libel the court charged: "I think, comparing the tes-
timony which you have heard with the description of the man who is
said to have beaten his wife as charged in the libel, that you will have
no difficulty in arriving at a conclusion as to whether or not S., the
plaintiff, was the person charged with having committed the offense."
It also charged that, if the jury should find the article did not refer to
S., then that was an end of the case, but that if they found that it re-
ferred to him they should proceed further. After an objection to such
instruction, the court also charged that the jury should not be influenced
by the opinion of the court; that they were the sole judges of the facts.
*Held*, that the instructions were not erroneous, and fairly submitted the-
question whether the libel referred to plaintiff.

Laughlin, J., dissenting.

Appeal from trial term, New York county.

Action by William E. D. Stokes against the Morning Journal
Association for libel. From a judgment in favor of plaintiff, and
from an order denying a motion for a new trial, defendant appeals.
Affirmed.

Argued before PATTERSON, McLAUGHLIN, O'BRIEN, IN-
GRAHAM, and LAUGHLIN, JJ.

C. J. Shearn, for appellant.

John J. Adams, for respondent.

INGRAHAM, J. When this action was before this court on a
former appeal (66 App. Div. 569, 73 N. Y. Supp. 245), it was held
that the question as to whether the article complained of was pub-
lished by the defendant, and whether it referred to the plaintiff,
were questions of fact for the jury, and should have been submitted
to them for their determination. Upon a new trial these questions
were submitted to the jury, who found against the defendant; and
the refusal of the court to dismiss the complaint, or to direct a
verdict for the defendant, upon the ground that from the whole

evidence the jury were not justified in finding that the defendant. published the newspaper which contained the libelous article, presents the main question upon this appeal.

The plaintiff proved the incorporation of the defendant on November 4, 1882. The certificate stated that the object for which the corporation was formed was "to print, publish, and issue, in the city of New York and elsewhere, a certain newspaper, daily, weekly, semiweekly, or either, both under the name of the 'Morning Journal.'" The plaintiff then called Mr. Carvalho, who testified that he was the president and treasurer of the defendant corporation; that the name of the newspaper was "The Morning Journal" in 1896, and was changed to "The New York Journal" on the 1st day of January, 1897, and that this was the same paper that had been previously published and owned by the defendant association; that the publication office of this journal was in the Tribune Building, in the city of New York; that all the funds which were received from the sale of the newspaper, with the receipts for all kinds of business, were deposited with Wells, Fargo & Co. to the credit of "The New York Journal," and the checks that were drawn were signed "The New York Journal," with the addition of the signature of the treasurer; that there were no words used such as "The Star Company," or "The New York Star Company," on any checks or pass book; that from April, 1897, to the present time the paper has been published under the name of the "New York Journal and Advertiser," and not under the name of the person or corporation who managed it or owned it; that when it was owned by the Morning Journal Association (the defendant) the same headlines were used as at present, except the addition in small type of "and Advertiser"; that the defendant corporation was still engaged in the business of publishing newspapers; that now the Star Company receives all of the funds from the publication of these newspapers; that it also does work for the defendant in publishing "Das Morgen Journal," a newspaper, printed in the German language, and the Star Company receives compensation from the Morning Journal Association for the work that it does; that "it is the construction company practically, and which handles all the funds and makes all deposits and owns the presses." It also appeared that the defendant corporation did not have what is called an "Associated Press franchise," but that a corporation known as the "Star Company" did have such a franchise; that the stock of the Star Company, a corporation organized under the laws of this state, which published a newspaper called the Morning Advertiser, was purchased by the stockholders of the defendant corporation; that subsequently the Star Company purchased from the Morning Journal Association the New York Journal, and that the Star Company then published the paper under the name of the "New York Journal and Advertiser"; that when the Star Company made this purchase they took over the employés of the New York Journal; that it was a transfer of interest from one corporation to another corporation; that the staff of the Journal still remained; that the paper now known as the New York Journal and Advertiser continued to be published

after the 1st of April upon the same presses that were used in the month of March, 1897, which prior to the 1st of April, 1897, had been owned by the defendant. There was also proved an agreement made on the 1st of April, 1897, between the Associated Press and the Star Company, by which the Associated Press grants to the Star Company the right and privileges of publishing in the New York Journal and Advertiser the night news report of the Associated Press for the term of 90 years. The certificate of incorporation of the Star Company, dated November 21, 1888, was also introduced in evidence.

On behalf of the defendant the minutes of a meeting of the trustees of the Star Company held on April 1, 1897, were proved, at which it was resolved that the Star Company purchase from the Morning Journal Association the newspaper the New York Journal, and all property and assets of the Morning Journal Association, except a newspaper known as "Das Morgen Journal," for the consideration of $1 and other valuable consideration; also the minutes of a meeting of the Star Company held on April 3, 1897, at which it was resolved to remove the principal office of the company and the publication office of the New York Journal and Advertiser to 192 Nassau street, New York; and also a special meeting of the board of directors of the Morning Journal Association (the defendant) held on March 29, 1897, at which it was resolved that the president be empowered and instructed to transfer the paper known as the "Evening Edition of the New York Journal," and the rights and franchises belonging thereto, in consideration of the sum of $1 and other valuable consideration, to Edward H. Clark; also a meeting of the stockholders of the Morning Journal Association held on April 1, 1897, at which was represented all of the shares of stock of the corporation. At this meeting it was unanimously resolved that the newspaper the New York Journal, and all the property and assets of the company, except the newspaper Das Morgen Journal be transferred to the Star Company in consideration of the sum of $1 and other valuable consideration, and that the newspaper known as the "Evening Edition of the New York Journal," and the rights and franchises belonging thereto, be transferred to Edward H. Clark, in consideration of the sum of $1 and other valuable consideration; also a meeting of the board of directors of the defendant corporation held on the 1st of April, 1897, at which it was resolved that the president be empowered and instructed to transfer the newspaper the New York Journal, and all the property and assets of the corporation, except the Das Morgen Journal, in consideration of the sum of $1 and other valuable consideration, to the Star Company. There was also offered in evidence an agreement made the 1st of April, 1897, between the Morning Journal Association, on the one part, and the Star Company, of the other part, whereby the Morning Journal Association assigned, transferred, and conveyed to the Star Company the newspaper the New York Journal and all the property and assets of the said Morning Journal Association, except the newspaper known as the "Das Morgen Journal." It also appeared that the said Star Company purchased from

the said Morning Journal Association the said newspaper the New York Journal, and the said property and assets, and agreed to pay therefor the sum of $1 and other valuable consideration; also evidence of a meeting of the board of directors of the Star Company, whereby it was reported to the company that a bill of sale had been executed by the Morning Journal Association transferring to the Star Company the New York Journal, and it was resolved that the name of the paper the Morning Advertiser, published by the Star Company, be changed to the New York Journal and Advertiser, and that the said newspaper should thereafter be published by the Star Company under the new name. Certain leases of the premises occupied in the publication of the New York Journal and Advertiser were also introduced in evidence, showing that such premises were leased to the "Star Company, owner of the New York Journal and Advertiser."

The facts in relation to the publication of this paper, and which seem to be established without substantial contradiction, are that prior to April 1, 1897, the newspaper the New York Journal was published by the defendant corporation; that at that time a formal transfer of the newspaper, and all property used in the publication of the newspaper, was made to the Star Company for the sum of $1 and other valuable consideration; that thereupon the Star Company, by its directors, assumed the publication of this newspaper; that prior to that time the proceeds of the publication of the paper had been deposited with the banking house to the credit of an account headed "The New York Journal"; that subsequent to the publication the same disposition was made of the money that was received from the proceeds of the publication of the paper; that both companies were managed by the same persons; that there was a notice to the banking house in which the deposits were made that thereafter the money deposited would belong to the Star Company; but there was no change made in the manner of doing business, the name of the account in which the funds were kept, or the form of the checks used to withdraw moneys from this account; that the defendant corporation still continued in business, publishing the German edition of the newspaper, which was printed upon the same presses that printed the morning paper known as the New York Journal and Advertiser, and the proceeds from the sale of both newspapers were received and deposited in the banking house before mentioned to the credit of the "New York Journal." The testimony as to this transfer was all furnished by officers of either the defendant company or the Star Company, who were more or less interested in the publication, either as stockholders or directors or employés of the various corporations. The question as to whether or not this defendant "published" the newspaper containing the libel complained of was submitted to the jury, and they found against the defendant.

The evidence shows that the connection between these two corporations was very close, both being controlled by the same persons; and the question is, not whether the Star Company would also have been liable for the publication of this libel,—not whether the

76 N.Y.S.—28

Star Company had a part interest in, or was the principal engaged in publishing the newspaper,—but whether from the whole evidence it can be said that this defendant corporation was so connected with the publication as to be responsible therefor. To sustain an action for libel against a corporation or individual it is not necessary to find that the defendant was the principal actor in the publication complained of. All connected with the publication of a libel are responsible as joint tort feasors for the damage caused thereby. It is conceded that prior to April 1, 1897, the defendant was the owner and publisher of this newspaper. It has shown certain formal transfers of the newspaper and the property and assets of the corporation used in its publication to the Star Company; but it also appears that the publication went on as before, without notice of its change, and no formal acts are established which show that thereafter this defendant corporation took no part in the publication of this newspaper. We may assume the fact to be proven that by this transfer there was a formal legal transfer of the property interest in the newspaper and in the property used to produce it, and in the lease of the buildings used for its publication; but the question comes down to this: was the evidence of a change in publication so conclusive that no question of fact was presented for the jury to determine as to whether this defendant still continued to take such a part in the publication of the newspaper so that it was liable for the tortious acts of those who have control of its publication? As before stated, the ownership and publication of this newspaper prior to April 1, 1897, was conceded. Did the act of this corporation in transferring the formal title of the newspaper to the Star Company conclusively establish that thereafter the defendant corporation had no part or control of the management of the paper?

I am inclined to think that, considering the character of the evidence produced, the nature of the transfers themselves, the fact that both of these corporations were controlled by the same persons, that after the transfer the corporation was not dissolved, and did not cease to do business, but continued an interest in the publishing business, carried on at the same place with the Star Company; the lack of clear evidence that the Star Company really has controlled the publication of the paper, its failure to make the reports required by law as to its property or profits of its business, and to make annual reports of its condition as required by law,—all go to the question as to whether or not the Star Company, notwithstanding these formal transfers, did actually engage in the business of publishing the newspaper, or whether that actual publication still remained where it was prior to the time that these transfers were made by the defendant company. It has been suggested that the object of these transfers was to secure to the newspaper the franchise of the Associated Press, a property right which was held by the Star Company and was not held by the defendant. If this was the object of the formal transfer, so that the newspaper as published could obtain the benefit of the franchise of the Associated Press, but the actual management and control of the publication remained with the defendant, who, through its officers or agents, took part in the publi-

cation of the newspaper, then, although the Star Company might also be liable, the defendant was liable for this publication; and in view of all the evidence, the nature of the transfers, and the character of the testimony given to sustain them, I think there was evidence to justify the submission of that question to the jury. There is no real hardship upon the defendant in this determination. A satisfaction of this judgment discharged all of those united with it in the publication, and the right of the plaintiff to recover for the libel may as well be determined in this action as in one brought against the Star Company. While the burden is on the plaintiff to prove that the defendant was engaged in this publication, so as to be liable for the libel, the question whether from all the evidence there was such a participation in the publication as justified a recovery was one, I think, for the jury, and we would not be justified in disturbing its verdict upon that ground; and this was the view taken by this court upon the former appeal.

The defendant also insists that the complaint should have been dismissed because it was not alleged that the article complained of was understood by the friends and acquaintances of the plaintiff and the public generally as applying to the plaintiff. The complaint does allege that the article complained of was published of and concerning the plaintiff, and the defendant's answer is confined to a denial of each and every allegation in the complaint. We think this was sufficient to justify the court in refusing to dismiss the complaint. Section 535 of the Code of Civil Procedure provides that "it is not necessary, in an action for libel or slander, to state, in the complaint, any extrinsic fact, for the purpose of showing the application to the plaintiff, of the defamatory matter, but the plaintiff may state, generally, that it was published or spoken concerning him; and, if that allegation is controverted, the plaintiff must establish it on the trial." Prior to the passage of this provision of the Code it was necessary to allege the extrinsic facts which would show that the article referred to the plaintiff; but since this provision of the Code was adopted it is sufficient to allege that the libel was published of and concerning the plaintiff. The question presented in Ertheiler v. Bernheim, 37 App. Div. 472, 56 N. Y. Supp. 26, was not whether this allegation in the complaint was sufficient, but whether or not the letter published was libelous per se. The evidence admitted in Van Ingen v. Publishing Co., 156 N. Y. 376, 50 N. E. 979, the admission of which was approved by the court of appeals, was to prove the allegation in the complaint that the article in question was published of and concerning the plaintiff, and what was said in that case has no relation to the necessity of the allegation of the extrinsic facts to show that the libel related to the plaintiff. The plaintiff was bound to prove to the satisfaction of the jury that the libel was spoken of and concerning the plaintiff, and was of such a character that it described the plaintiff with sufficient certainty to enable his personal acquaintances on reading it to apply to him the slanderous imputation; otherwise, however gross the charge, it is no libel upon him; and that, at the request of the defendant, the court expressly charged, and there appears to be no request to charge more specific upon this point that the court refused.

The defendant also excepted to the refusal of the court to charge that no punitive damages could be awarded in this case. We think the court was right in this refusal, as the testimony was sufficient to show that the defendant published this charge without investigation of any kind, and subsequently, at the request of the plaintiff, refused to make any retraction or explanation. This evidence would justify the jury in finding the express malice requisite to an award of punitive damages.

There were also several exceptions to rulings upon questions of evidence, but we do not think that any error was committed that would justify a reversal of the judgment. The testimony that an application was made to the responsible editor of the paper to retract this publication was evidence bearing upon the question of express malice, and was, I think, competent. When there has been a publication libelous per se, and a request to the publisher of the libel to retract, which is refused, that refusal is competent evidence as to the feeling and intention of the publisher with which the libel was published. There could be no question about this if the defendant was an individual; and as corporations engaged in the publication of newspapers can act only through their officers or agents, the corporation is liable for the acts of its responsible officers or agents upon whom it has conferred the power to determine what should be published; and their acts in relation to the publication of the newspaper are certainly competent evidence in relation to the publication and the motives with which it was made.

Nor was it error to exclude the summons and complaint in an action brought by this defendant against the Star Company; for, as before pointed out, the fact that the Star Company was also concerned in the publication of this paper would not relieve this defendant from liability; and the allegation that the Star Company was the owner and proprietor of and published this newspaper was not at all inconsistent with the facts upon which this plaintiff claimed to charge the defendant as jointly engaged in such publication.

There is one other question which is presented upon an exception to the charge to which attention should be called. The court, after calling the attention of the jury to the evidence upon the question as to whether this article did, as a fact, refer to the plaintiff, said:

"Now, you have heard testimony as to all these facts, and I think, comparing the testimony which you have heard with the description of the person who is said to have beaten his wife as charged in the libel, that you will have no difficulty in arriving at a conclusion whether or not Mr. Stokes, the plaintiff in this case, was the person who was charged with having committed the offense, the charge of which constituted the libel. Of course, if you find that the article did not refer to Mr. Stokes, then there is an end of this case, and you need go no further in your deliberations, because if he has not been libeled there is no cause of action, and nothing more to be said about it. If, however, you find from evidence that he was the person mentioned and described in this article, and that the article which is a libelous article was a libel upon him, then you will have to go one step further."

After the charge counsel for the defendant stated: "Your honor also charged the jury, to which I except: 'The jury will have no difficulty in arriving at the conclusion as to whom the article ap-

plied.'" The court: "I don't think I said as to whom; I think I said as to whether or not the article applied to the plaintiff." Counsel for the defendant: "You said, 'I think you will have no difficulty in arriving at the fact Mr. Stokes was the person libeled.'" The court: "I did." And counsel for the defendant excepted. Then the court stated to the jury:

"One thing, perhaps, I should say now, gentlemen, that I omitted to say, and that is, that you are not to allow yourselves to be influenced by any opinion which you may think I have formed upon any facts in this case. I have not intended to express any opinion; and if you should have gathered that I have any opinion whatever on any fact, you will disregard that, because you are the sole judges of the facts, and my opinion is not to be taken by you."

We think no error was here committed which calls for a reversal of the judgment. The statement of the court in the charge was unobjectionable. He simply told the jury that he thought they would have no difficulty in arriving at a determination of the question of fact presented. There was no intimation that the jury should find either way upon the question; but they were expressly instructed that if they should find that the article did not refer to the plaintiff the defendant was entitled to a verdict. It was this expression of the court in the charge to which the defendant referred when he excepted, and the characterization of the charge by counsel for the defendant is not to be considered in construing this exception as the charge actually delivered. The assent of the court to the statement of counsel as to what had been said cannot be construed as a charge that the jury were to find upon that question in favor of the plaintiff, as in the charge the question of fact was left to them for their determination; and then, as qualifying what had been said, the court expressly instructed the jury that they were the judges of the facts, and were not to be influenced in any way by any opinion that they might conclude that the judge had upon the questions of facts submitted to them. This question as to whether or not the libel referred to the plaintiff was fairly left to the jury, and they were expressly told that if they did not find that the libel related to the plaintiff their verdict must be for the defendant; and were told that upon these questions submitted to them there was no intention of the judge to express any opinion, and that they were not to be influenced by any opinion which the jury might think the judge had formed upon any fact in the case. There are no other questions presented in this case that require discussion, and upon the whole case I can find nothing that would justify a reversal of the judgment.

Our conclusion, therefore, is that the judgment and order should be affirmed, with costs.

O'BRIEN and McLAUGHLIN, JJ., concur. PATTERSON, J., concurs in result.

LAUGHLIN, J. I dissent on the ground that the statement made to the jury by the court in the charge, "I think you will have

no difficulty in arriving at the fact that Mr. Stokes was the person libeled," was prejudicial error. The plaintiff was not named in the libel, and it was a fair question of fact as to whether it would be understood as referring to him. It should have been left to the jury; but I think the intimation of the court's opinion was so clear and strong that the question was virtually taken from the jury, and the exception thereto was well founded.