items of which it was composed. In the main the claim is that, prior to the year 1902, $17,612.07 was charged as expense to the Keller Jewelry Manufacturing Company, which should have been charged to L. H. Keller & Co.; that, at the end of the year 1902, Mr. Adolph Keller told the bookkeeper to take off part of that, because it was too much to charge to the Keller Jewelry Manufacturing Company, and in fact it ought not to have been charged anyway; that it was too much to charge back at any one time, but that on December 31, 1902, there was charged back to L. H. Keller & Co. $4,125.04, "and after that he was supposed to take some part off every year." As matter of fact, however, no charges were thereafter made in the years 1903 and 1904 until after Adolph Keller's death, when this lump sum was entered in the books.

The explanation is so unsatisfactory, and, bearing in mind that the books should have been closed as of the day of Adolph Keller's death, and that the burden was upon the defendant, we think that the account should have been surcharged with this amount. Therefore findings 18 and 19 are amended, so that the total amount of the capital should be $97,633.84, making the amount of the capital of the deceased partner of Adolph Keller, one-half thereof, $48,816.92, instead of $43,633.50, as found. The sixth conclusion of law should be similarly modified.

[2] Second. There should be allowed the interest on the difference between said sum of $48,816.92 and the sum of $38,554.85, the amount stated in the first account rendered by defendant; that is, on $10,-262.07, from May 18, 1904, to the date of the judgment, at 4 per cent. The reason why interest on the difference found by the court was not allowed in the judgment was that the defendant claimed that he had overpaid the amount of principal required to be paid in partial payments by the agreement, and that such overpayment should be credited to the interest account. The answer is that the defendant, having elected to credit said payments to principal account, and having the right so to do, could not thereafter change that election and credit it to the interest account. When an election has once been made and acted upon, it is too late thereafter to change the application of the payment.

The judgment appealed from should be modified as indicated, and, as modified, affirmed, with costs to the plaintiffs.

---

### BIRD v. PRESS PUB. CO.

(Supreme Court, Appellate Division, First Department. January 3, 1913.)

1. LIBEL AND SLANDER (§ 7*)—TAMPERING WITH WITNESSES—LIBELOUS PER SE.

A false charge that an attorney had advised his client to give a witness money to get her out of the way was libelous per se.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 17–78; Dec. Dig. § 7.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. LIBEL AND SLANDER (§ 121*)—LIBEL—EXCESSIVE DAMAGES.

A verdict for $3,000 was not excessive, where plaintiff, an attorney, was falsely charged with advising his client to give a witness money to leave the country.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 353, 354; Dec. Dig. § 121.*]

3. LIBEL AND SLANDER (§ 104*)—REQUEST FOR RETRACTON—LETTER.

The refusal of a publisher to retract a publication, libelous per se, is competent evidence as to the feeling and intention of the publisher; but a letter to a publisher, stating that a publication was false, and containing many self-serving declarations, and stating that he was going to sue, was not a request for a retraction, and its admission was reversible error—the fact that the publisher did not thereafter publish a retraction being no evidence whatever of a premeditated wrong.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 284–291; Dec. Dig. § 104.*]

4. LIBEL AND SLANDER (§ 107*)—EVIDENCE—FEELINGS OF PLAINTIFF.

In a libel action, plaintiff may testify as to the effect of a publication upon his feelings.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 299–303, 305, 351; Dec. Dig. § 107.*]

Clarke and Dowling, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Hobart S. Bird against the Press Publishing Company. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Howard Taylor, of New York City, for appellant.

Gilbert E. Roe, of New York City, for respondent.

McLAUGHLIN, J. The defendant, on the 15th of September, 1910, published in its newspaper the following article:

"Cassira Pennachio, the wife of Attilio Pennachio, a well-to-do banker, at No. 529 Morris avenue, whose examination on a charge of attempting to kill her husband with a pistol on September 7th, has been postponed from time to time, was not in the Morrisania court when the case was called by Magistrate House to-day. Her lawyer told the court that he had heard that the woman had been given money and sent back to Italy. The husband said that his lawyer, Hobart Bird, of No. 320 Grand street, had told him to take this course. Bird admitted that such was a fact. The court asked the lawyer to stop outside of the rail, and said that he would bring the case to the attention of the Bar Association. The papers will be sent to the district attorney."

The plaintiff, claiming that the article, so far as it referred to him, was libelous, brought this action to recover the damages alleged to have been sustained. He had a verdict of $3,000, and from the judgment entered thereon, and an order denying a motion for a new trial, defendant appeals.

[1] There was no attempt on the part of the defendant to prove the truth or justify that part of the article which stated:

"The husband said that his lawyer, Hobart Bird, of No. 320 Grand street, had told him to take this course. Bird admitted that such was a fact."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff is an attorney of this court, and the article charged him with the commission of a crime. It was, therefore, libelous per se.

[2] It is a serious charge to make against an attorney that he has advised a client to pay money to a witness in order that he may be gotten out of the jurisdiction of the court. If he were guilty of the offense charged, then he is unworthy to practice his profession, and ought to be disbarred. The falsity of the article being established, and, there being no evidence offered to justify the publication, defendant, of course, was liable in damages, and the verdict rendered certainly cannot be said, upon this record, to be excessive. We would, therefore, have no hesitancy in affirming the judgment and order appealed from, except for an error committed at the trial in the reception of evidence.

[3] The court received, over defendant's objection and exception, a letter written by the plaintiff to the defendant subsequent to the publication. In the letter he called attention to the fact that the statement in the article before quoted, referring to him, was false, and then set forth at some length self-serving declarations as to the injury which had been done him, and concluded:

"I have, of course, only one remedy, faulty and inadequate as it is—money damages. The right to this I shall assert."

If there had been a request in the letter for a retraction, so much of it, at least, would have been admissible. When a publisher is called upon to retract a publication libelous per se, it is his duty to retract the charge as fully and broadly as it has been made, and his refusal to do so—

"is competent evidence as to the feeling and intention of the publisher with which the libel was published." Stokes v. Morning Journal Ass'n, 72 App. Div. 184, 76 N. Y. Supp. 429.

This seems to be the general rule. Palmer v. N. Y. News Pub. Co., 31 App. Div. 210, 52 N. Y. Supp. 539; 25 Cyc. 500. Here there was no request in the letter for a retraction. Bradley v. Cramer, 66 Wis. 297, 28 N. W. 372. What was said would seem to indicate that the plaintiff did not want a retraction, but did want "money damages." After their relations were thus stated by the plaintiff, the fact that the defendant did not thereafter publish a retraction was no evidence whatever of a premeditated wrong in the publication.

[4] It is also urged that the court erred in permitting the plaintiff to testify what effect the publication had upon his feelings. It is at least doubtful whether defendant is in a position to raise this question. When the plaintiff was asked to describe his feelings, defendant's counsel stated he had no objection to his doing so; but, assuming that question was raised by a subsequent motion to strike out, the testimony was clearly admissible. Similar questions were passed upon in Van Ingen v. Star Co., 1 App. Div. 429, 37 N. Y. Supp. 114, and Palmer v. N. Y. News Publishing Co., supra. In the former case Mr. Justice Ingraham, who delivered the opinion of the court, in referring to the question, said:

"It is well settled that, in determining the amount of damage where a pub-lication is libelous per se, the jury has the right to consider the mental suffer-ing which may have been occasioned to the plaintiff by the publication."

The case was subsequently taken to the Court of Appeals, where the determination of this court was affirmed (157 N. Y. 695, 51 N. E. 1094) on his opinion. In the latter case, Mr. Justice Rumsey, who de-livered the opinion of the court, said:

"A publication of a libel which reflects upon the character of a reputable man must necessarily cause him more or less mental suffering and humiliation, and these things are elements of general damages which the jury may take into consideration."

See, also, 25 Cyc. 533, and authorities cited in note.

No error was committed in this respect, nor do we find any errors, other than the one pointed out, which call for consideration.

The judgment and order appealed from are therefore reversed, with costs to appellant to abide event.

INGRAHAM, P. J., and SCOTT, J., concur.

CLARKE, J. I dissent. It seems to me that the letter was admis-sible in evidence for the purpose of showing that the attention of the defendant had been called to the falsity of the publication and should be treated as in effect a request for retraction. Irrespective of a re-quest for retraction, I think it the duty of one who has published a libelous statement, which he subsequently discovers to be false, to right the wrong, so far as he can, without request, and that it is material upon the question of express malice, and hence to the amount of dam-ages, to show that prior to the commencement of the action he knew that the charge made was unfounded. As said by Nelson, C. J., in Hotchkiss v. Oliphant, 2 Hill, 510:

"If the defendant had become satisfied that the charge which he had un-wittingly copied was unfounded, common honesty and a decent respect for the rights of the injured party call for an unqualified withdrawal. * * * A libelous publication may be inadvertently admitted into the columns of a newspaper, and the editor chargeable only with mistake or indifference to the truth; but if, when advised of his error, he hesitates to correct it, the case rises to one of premeditated wrong, of settled and determined malignity towards the party injured, which should be dealt with accordingly. There is no longer room for any indulgence toward the act, and the party becomes a fit object for exemplary punishment."

The judgment and order appealed from should be affirmed, with costs.

DOWLING, J., concurs.