JAMES VARVARO, Respondent, v. AMERICAN AGRICULTURIST, INC., and Others, Appellants.

THOMAS VARVARO, Respondent, v. AMERICAN AGRICULTURIST, INC., and Others, Appellants.

VINCENT LUMIA, Respondent, v. AMERICAN AGRICULTURIST, INC., and Others, Appellants.

First Department, December 23, 1927.

Libel and slander — defenses — defenses of justification, privilege and in mitigation — defendants entitled to show absence of malice under defense of mitigation — error to reject evidence as to source of defendants' information — letter by plaintiffs' attorney to defendants admissible in part.

The plaintiffs based their actions on a publication in defendants' paper. It appears that the plaintiffs and one other were indicted for using the mails to defraud in a scheme known as the " Rabbit-buy-back plan." One of the plaintiffs was acquitted after a trial and the others were acquitted upon direction of the court. The article in question was published after the acquittal of the plaintiffs and as a defense to the alleged libel the defendants pleaded justification and privilege, and in addition a partial defense in mitigation of damages. In support of the defense of privilege it was alleged that the publication was a matter of public importance and constituted a fair and substantially true report of the judicial proceedings, and that it was published without malice and for justifiable ends, in the belief that the statements published were true, and in support of the partial defense of mitigation of damages it is alleged that the substance of the matter published came to the defendants in the regular course of business from reliable sources and was published after investigation by the defendants and that the publication was without malice and in good faith.

Under defendants' answer they had the right to prove in reference to the partial defense in mitigation of damages that there was an absence of malice and to introduce evidence to show the sources of information which were relied on in publishing the article and the facts contained therein.

Accordingly, it was competent for the defendants to introduce in evidence a statement by the United States Post Office Inspector which was furnished in the first instance to the Assistant United States District Attorney who prosecuted the case, which statement purports to give a complete summary of the activities of the corporation in which the plaintiffs were interested as disclosed by an investigation of the Post Office Department.

Furthermore, a letter received by the defendants from a corporation engaged in the publication of papers and magazines to the effect that it had refused to receive further advertising from the plaintiffs' corporation because of numerous complaints, was admissible.

It was error to exclude the receipt by the defendants of a bulletin published by the United States Department of Agriculture, in which a warning was issued against the " buy-back " method of doing business which bulletin was received prior to the publication in question.

A letter written by plaintiffs' attorney and addressed to the defendants which consisted largely of self-serving declarations, was not admissible as to such declarations but was admissible in so far as it demanded a retraction by the defendants.

APPEAL in each of the above-entitled actions by the defendants from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 1st day of November, 1926, and also from an order in each action entered in said clerk's office.

*Edward S. Greenbaum* of counsel [*Samuel Greenbaum* with him on the brief; *Greenbaum, Wolff & Ernst,* attorneys], for the appellants.

*Harry Bijur* of counsel [*Bijur & Herts,* attorneys], for the respondents.

O'MALLEY, J.   This appeal comes before us on a bill of exceptions. The actions are for libel and are based upon an alleged libelous article which appeared in the *American Agriculturist,* the defendants' publication, in its issue of May 31, 1924.

Briefly it appears that the three plaintiffs and a codefendant, one Nathan D. Hecht, had been tried in the Federal court on a charge of using the mails to defraud.   Their acts and conduct in connection with the mail order business of the Standard Food and Fur Association, Inc., was the basis of the charge and indictment. The business activities of this concern variously have been described as the "Rabbit-buy-back plan," or the "Belgian Hare Scheme."   The principal feature involved in the plan was to sell rabbits in pairs for breeding purposes upon the representation that enormous profits to purchasers would result.   The price per pair to the farmer was from seventeen dollars to thirty dollars.   Each sale carried the agreement of the seller to repurchase the rabbits raised from this stock from at least seven dollars to eighteen dollars and fifty cents a pair.   Alluring information of the profits to be made was published, such as following:

## "FIGURE YOUR PROFITS.

"Now this is really the most important chapter to YOU as it shows in Dollars and Cents what profits can accrue raising Belgian Hares, Flemish Giants, New Zealand Reds, Black Siberians, Checker Giants and Imp. Spotted Giants.

"For example — a doe having 5 litters a year — and from 6 to 12 in a litter.   Figuring on 7 to a litter — 5 litters a year, makes 35 hares.   We pay you at the rate of $7 to $15 per pair or $122.50 to $262.50 yearly for the young ones.   The food they eat cannot cost more than $15.00; therefore your profits on one doe are at least $107.50 yearly; on 10 does, $1,075.00; on 100 does, $10,750.00, and so on."

The trial resulted in the defendant Hecht pleading guilty and being sentenced to imprisonment; in the acquittal by the jury of

the plaintiff James Varvaro; and in the acquittal by direction of the court of the plaintiffs Thomas Varvaro and Vincent Lumia upon the ground of insufficient evidence to connect them with the conspiracy. The alleged libelous article which was published concerning the outcome of the trial follows:

" ONE TO JAIL, AND ONE ACQUITTED.

" Nathan D. Hecht, founder of the Standard Food & Fur Association, was sentenced on May 22 to serve one year and a day in the Federal Prison at Atlanta.

" James Varvaro, to whom Hecht sold the business some time ago and whose defense consisted of the claim that he was ignorant of the deceit Hecht had practiced upon buyers, was acquitted by the jury. His co-defendants were set free by the Judge due to insufficient evidence to connect them with the scheme. The verdict of the jury was brought in in spite of a severe arraignment of Varvaro by Judge Luse of Wisconsin, before whom the case was tried. The Judge spoke scathingly of the business methods of the firm and warned Varvaro to ' watch his step ' in any business venture he might undertake. Of course, this acquittal of Varvaro was a disappointment both to the District Attorney's office, which tried the case, and to the *American Agriculturist* and other publications which were anxious to gain a decisive victory.

" However, according to Assistant District Attorney D. J. Gillette, who prosecuted the case, much has been gained by the trial and its outcome. The Standard Food and Fur Association and the Big Four Syndicate, which was also the same business, no longer exist — the result of the campaign was to send the firm into bankruptcy and from the testimony of several witnesses, the defendants could save nothing from the wreck. Furthermore, in addition to Hecht's sentence, the Varvaro brothers and their associate, Lumia, have been completely discredited and, according to Mr. Gillette, will find it difficult to re-establish themselves in business of any sort again.

" *The A. A. Furnished Evidence.*

" In commenting on the case in general as well as on the verdict, Assistant Attorney Gillette said: ' Had it not been for the *American Agriculturist* this case would probably never have been brought to trial. It was necessary to prove the use of the mails to defraud and the co-operation of the magazine was invaluable in securing this evidence. We have not only had the assistance of the publisher, who turned over to us all the files of the American Agriculturist Service Bureau, but we have also had the skilled co-operation of the magazine's attorney. The Post Office Inspector,

whose duty it was to collect all possible evidence of this sort, was therefore able to bring in a great mass of correspondence, which, of course, included a variety of different types of complaints. Inas-. much as the Post Office Department has a great many cases of this type to handle it naturally prosecutes the ones which seem the most important. Thus, the *American Agriculturist* helped to start the ball rolling and the conviction of Hecht and the wide publicity given the case should completely stamp out the buy-back rabbit scheme through which so many farmers have been victimized.' "

Each of the complaints in addition to other essential allegations, charges that the publication was false and untrue, was known by the defendants to be untrue and was maliciously published, as a result of which each plaintiff sustained damage. In the complaint of James Varvaro, the innuendo carried by the false and libelous matter was that the plaintiff was dishonest, untrustworthy and an unfit person for any one to do business with. The complaints of the plaintiffs Thomas Varvaro and Vincent Lumia were in all respects identical, except as to one or two immaterial matters. The plaintiff James Varvaro asked $50,000 damages and each of the other plaintiffs $25,000 each.

Each answer contained two affirmative defenses: (1) Of justification; (2) of privilege; and, in addition, (3) a partial defense in mitigation. In justification, the defendants allege in substance that their publication, the *American Agriculturist*, aims to protect its readers and the public from fraud and unfair and dishonest dealings and maintains a service bureau to co-operate with the public authorities and other organizations engaged in similar efforts, a fact known to its readers and the public; that prior to the publication of the article it had received many complaints concerning the business methods of the Standard Food and Fur Association, Inc., and as a result had caused an examination and investigation into its affairs. After alleging the connection of each plaintiff with the corporation, its method of doing business and the representations made in connection therewith, the facts showing their falsity and indicating the fraud practiced are alleged. Without specifying these allegations in detail it is sufficient to state that it was alleged that for a period of two years the concern received from its customers upwards of $100,000 for rabbits and that during a typical six months period during this time, purchased back rabbits to the extent of less than $1,000 in value. It was also alleged that because of the methods of the concern in its failure to carry out its contracts, investigations by various other organizations, including the National Vigilance Committee of the Associated Advertising

Clubs of the World, were made, and as a result the advertising of the corporation was refused by various publications, and such organizations so conducting investigations had received numerous complaints of mistreatment by the corporation of its customers. The facts concerning the trial and its outcome are alleged, and further that the United States Assistant District Attorney who prosecuted the action made the statements attributed to him in the alleged libelous articles and that the facts contained therein were and are substantially true.

In support of the defense of privilege it is alleged that the publication of the article was a matter of public importance and constituted a fair and substantially true report of a judicial and other public and official proceedings and was published with good motives in the interest of justice and for justifiable ends; that it was made without malice and in good faith, believing it to be true and with reasonable probable cause; that there was proper occasion and, therefore, privilege.

For a partial defense in mitigation it is alleged that the substance of the matter published came to the defendants in the regular course of business, from reliable sources and after investigation by the defendants prior to publication; that the publication was made without malice and in good faith and in reliance upon the truth and accuracy thereof, with reasonable and probable cause for believing that the same was true, and that the same was true and the publication was in the public interest. The allegations of the answer will be specified in more detail in connection with the consideration of certain alleged errors in the exclusion of evidence.

We have reached the conclusion that these judgments must be reversed and new trials granted because of prejudicial error committed at the trial. Under the defense of mitigation the defendants were entitled to show absence of malice. To this end they had a right to prove the source of information relied on in publishing the article and the facts contained therein. This has long been the settled rule. (*Bush* v. *Prosser,* 11 N. Y. 347; *Hatfield* v. *Lasher,* 81 id. 246; *Pecue* v. *West,* 233 id. 316; *Collis* v. *Press Publishing Co.,* 68 App. Div. 38; *Kohn* v. *P. & D. Publishing Co.,* 169 id. 580.) The rule as stated in the early case of *Bush* v. *Prosser* (*supra*) and quoted in *Hatfield* v. *Lasher* (*supra*) is as follows: " The defendant has a right to prove the absence of malice in mitigation of the verdict, and to do this it is indispensable to prove that he believed, and had some reason to believe, the charge to be true when it was made. There are but two conceivable modes of doing it: One by proving that he received such information from others as induced him to believe the charge to be true; the other

by showing the existence of facts within his knowledge calculated to produce such a belief."

It was competent, therefore, for the defendants to introduce in evidence the statement of the United States Post Office Inspector furnished in the first instance to the Assistant United States District Attorney who prosecuted the case and who in turn furnished it to the defendants before the publication of the alleged libelous article. This statement purports to give a complete summary of the activities of the Standard Food and Fur Association, Inc., as disclosed by the investigation of the Post Office Department. For the same reason, the letter received by the defendants from the Curtis Publishing Company to the effect that the latter organization had refused to receive further advertising from the corporation because of numerous complaints received, was admissible. So, too, it was error to exclude the receipt by the defendants of the United States Department of Agriculture bulletin. The defendants alleged that this Department in said bulletin had taken occasion to warn persons against the " buy-back " method of doing business " as it was found that in its actual working out many innocent purchasers throughout the country were victimized." This bulletin, it appeared, had been brought to the attention of the defendants before publication.

With reference to the exclusion of other evidence of similar character, relating to the information upon which the defendants relied, we do not deem it necessary to discuss each offer of evidence in detail. It is sufficient for the purpose of another trial to here call attention to the rule which is to be observed in the admission of evidence under the defense of mitigation and thus leave it to the trial justice to pass upon each piece of evidence when offered in the light of the facts and surrounding circumstances then prevailing.

Other alleged errors require consideration. The letter of plaintiffs' attorney to the defendants consisted largely of self-serving declarations. To this extent it was incompetent; and only in so far as it demanded a retraction was it admissible. (*Bird* v. *Press Publishing Co.*, 154 App. Div. 491; affd., 214 N. Y. 645.) Nothing is found in the record before us to justify its admission for any other purpose. The evidence offered relating to damage would appear to be admissible under the allegations of general damage. While its probative force might seem to be of questionable value, its weight was for the consideration of the jury.

It follows that the judgments and orders should be reversed and new trials granted, with costs to the appellants to abide the event.

DOWLING, P. J., MERRELL, MARTIN and PROSKAUER, JJ., concur.

In each case: Judgment and order reversed and new trial ordered, with costs to the appellants to abide the event.